Good morning, everyone. We are delighted to be sitting here in Pasadena, and we're equally delighted to be joined by our colleague from the Second Circuit, Seventh Circuit, Judge Hamilton. Welcome and thank you, Judge Hamilton. My pleasure. Thank you for having me. Yes. The cases will be called in the order listed on the docket. The first two cases, Lopez-Mejcanos v. Bondi and Ramos-Garcia v. Bondi, have been submitted on the briefs. The first case on calendar for argument is United States v. Kheyre. Counsel for appellant, please approach and proceed. Good morning, Your Honors, and may it please the Court. My name is David Zuckman. I represent Mr. Kheyre. I'd like to take about 60 seconds to describe what I think the issues are, and then I submit myself to your questioning. The question before the Court is, Mr. Kheyre, where he's sentenced today, would have faced a lower guideline range because his status points for criminal history wouldn't have counted. The district court held that the district court couldn't consider the lower guideline range because the guideline commentary says if departures have been given, then you essentially are ineligible for the reduction. I contended that the Sentencing Commission didn't have the power to act as it did. I did not say at that time, because the law says you have to rule by policy statements, I said they simply lack the power. The question is, did my argument preserve this? If my argument preserved this, then the only question is, was it prejudicial? And I think it was, since in no place in the record does the judge reference the correct guideline range. And that's the one thing that we always know is true. You've got to consider the guideline range when sentencing. And the final point is — This was a resentencing, correct? It was a resentencing, Your Honor. So a lot of things did not need to be repeated, right? Oh, certainly, Your Honor. I mean, if you get to the point where you're considering eligibility, then you have to consider the guideline range. But Your Honor is correct. If the judge feels bound by the commentary, then the judge doesn't ever get to that point because the judge believes that the sentencing commission has tied their hands. It's my contention that 3582c2 says the sentencing commission shall rule by policy statement. That is what it says. It doesn't say commentary. It does say commentary in other portions of the law. That means expressio unis est exclusio alteris. And I probably didn't say that correctly, but it means if you name one thing, it means you're excluding other things. It means if you coin heads, you're also saying it's not tails. In other words, when I say the sentencing commission does not have this power because the law says policy statement, saying it doesn't have the power is the flip side of saying you've got to rule by policy statement. It's the same argument. Now, I know I didn't say Kaiser below. I've got to tell you, Your Honors, I don't read that many administrative law decisions. But now that I understand the issue, it's very clear that Kaiser is just an expression of the rules of agency restriction. They never had the power. At some point, the courts allowed agencies to essentially have penumbral power, to have a power. Mr. Zugman, can I ask you, sorry to interrupt, but before we get to the Kaiser problem, let's look at the text of 1B1.10. Okay. And in particular, subsection B1, which says the court shall determine the amended guideline range and shall leave all other guideline application decisions unaffected, right? Under your theory, could you tell me what work the exception for substantial assistance departures does? Well, that's an interesting point, Your Honor, and that's the case that I cited from Judge Sabraw in the District Court in San Diego, where he found that the Sentencing Commission's position was completely irrational for the Southern District of California, where nearly every case has a fast-track departure. So none of our low-level, minor defendants get any reductions because they're getting fast-track. Now, I agree. The commentary does say what it says. I'm not asking you about the commentary. I'm asking you about the text of 1B1.10. The policy statement, because it seems to me the amended guideline range probably means, without taking into account any downward departures or variances, and because if not, then it's hard to understand what the exception for substantial assistance departures does. And you haven't answered my question except to say you don't like it in the Southern District of California. That's a fair point, Your Honor. And let me, I misunderstood Your Honor's point, and Your Honor is making a... It is a textual point. It is a textual point, Your Honor. And my answer to that is that it is correct to say that there's any number of ways that a district court can get under a guideline range. It doesn't have to be through departures. It can be by variance. And departures and variances can be stated in terms of months rather than levels, correct? And in 3553 for substantial assistance, it has its own special rules that some judges require levels, some judges require months. There is not a... The commission and the law do not require anything specific about that, right? We hardly review it. It's merely... Okay, so can you get back to my question? Under your interpretation of the text of 1B1.10, what work does that exception for substantial assistance do? Well, if you get a substantial assistance variance, then it wouldn't be counted. Like it's... There are any number of variances... Then you are eligible for the reduction, right? Yes, you are definitely eligible. But presumably to use your exclusio... That would cut the other way so that if we have this exception for substantial assistance downward variances and departures, we don't for others, right? Your Honor, this point that Your Honor is making, I think, is a fair one in the sense that substantial assistance does have its own mechanism. And if it does have a cutout for how substantial assistance is treated, your inference from that is that that means that everyone else who's sentenced under... Every other variance or departure is not taken into account in calculating the amended guideline range. Well, I would collapse to the position that Judge Sobraw took, which is that that sort of position first treats people who are more aggregated... Please treat it as a matter of text. I understand that given the numbers and the pressures in Southern California, everybody gets a downward departure. I get that. But this is law for the circuit. It's a nationally applicable rule. Tell me what that exception does. I think that that exception is narrowly tailored for the unique situation of substantial assistance, which means that there are reductions that apply to substantial assistance people that don't apply to regular folk. But the departure that a person can get a sentence underneath the guideline range, like when you reassess... What I think the work, what the policy statement is meant to mean is that the district court takes what it did at sentencing, and it reexamines it in light of the new law. I think that all guideline departures, and I argue this in my brief, includes departure decisions that the whole purpose of 3553 is that these things are bundled. So that... Now, wait a second. The departure is a specific term of art, is it not? And it basically takes it out of the guideline range, and then the district court can depart either upward or downward because the facts of a particular case warrant treatment that is different from the run-of-the-mind cases resulting in the guideline range. I... Candidly, Your Honor, I think that's an atavistic view. I think that's a view of the guidelines that used to exist when there was a distinction between departures and variances. But both this court eliminated that distinction in the Mohammed case, and the sentencing commission did the exact same thing this year. In fact, the proof of practice of what actually happens in court and affects guys like Mr. Terry, who fought for our country for 10 years... And the district court considered all that and said, you know, the aggravating factors here outweigh the mitigating factors because he distributed the fentanyl that caused the death of an individual, and he continued to deal after the death, and that those aggravating factors warranted a departure from the guideline range. The district court gave him a departure under the guideline range. That's the problem. The whole point is the district court found mitigation beyond what the government recommended. That's what's rendering him ineligible, is the fact that his case was found to be mitigated. But my point about the departures and the variances is valid. Well, his case was found to be aggravating, not mitigating. The court weighed aggravating and mitigating factors and essentially concluded that the aggravating factors... He had a 180-month sentence on a 216-month guideline range. Right. It went under. So it departed downward. Mr. Zucman, could I ask you about the discretionary prong of 3582C2? You said in your brief that the district judge had overlooked mitigating history for Mr. Carey. He referred to it in his written opinion and said he stood by the 180-month sentence. How would that be an abuse of discretion? Well, I have to win the first point. In order for me to get my foot in the door, I have to be right that the district court should have applied the lower guideline range. It should have found that he was eligible. You never get to that point if we don't... I'm asking you, if we were to get to that point, how would we find an abuse of discretion? Because the district court didn't say, and even if the guideline range were reduced to 168 months to 189 months or whatever, 216, whatever the number is, I find that a sentence of 180 in that guideline range, it's actually a bigger than 24-month variance. This isn't like that original sentencing where you're covering your bets on a guideline issue. He's taking two steps. Is the defendant eligible? Second, if he is, would I exercise my discretion? He says no and no. Now, you've got to win both of those issues. Where's the abuse of discretion on the... Because I didn't get a fair shot, Your Honor. And the reason I didn't get a fair shot is we were there for a remand. Remember, Your Honor, I tried to take a knee. I took an Anders brief because I thought that there was more danger by appealing than not. We got back there and all of a sudden the status point law changed, so all of a sudden I had an issue. A new opportunity, right. But we didn't have full briefing. The government submitted its brief after I argued it. He issued an order. The judge, Judge Huey, who I greatly respect, issued an order, and Your Honor is totally right that Judge Huey did list out the two tours of duty that Mr. Carey did and the damage he suffered to his body and his brain. It's a very sad situation, Your Honor, and I think if you just give me a chance to make my case, maybe you'll be persuaded, maybe you won't. Well, the judge said he... First of all, he declined to re-sentence, and he said if he did re-sentence it would be the same. So why do you think if you made a case it would make a difference? Let's actually make it completely clear, Your Honor. Judge Huey indicated that it might not even be 180 months because Mr. Carey should have waived his appeal. So I know that I'm playing with fire, as it were, but I think if I can just get a chance to make mitigation, that number is not going up. But let me ask you, what do we do about the limited remand? The remand was not for re-sentencing, and so I'm having difficulty seeing how the district court could abuse its discretion in declining to re-sentence when there was a limited remand that did not require re-sentencing. That's a jurisdictional point, Your Honor, and Your Honor is correct to say if the hook isn't there, then the hook isn't there. I did make the motion, the district court did accept it, the government did not argue a lack of jurisdiction. I could go refile all the same stuff... But it's not really a jurisdictional issue, it's whether or not the remand was complied with. The scope of the remand. The scope of the remand, yes. Fair enough. I tried to open up that remand. I did every... I pulled on it so hard. Yeah, I understand. I'm over time. Thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court, Andrew Hayden on behalf of the United States. The district court properly denied the motion to reduce Mr. Kerry's sentence. As this court held as recently as December in United States v. Mickey, neither 3582C2 or 1B1.10 violate the non-delegation doctrine. And then as extended to this case, it can't be maintained that the district court plainly erred when it used the commentary to find that Mr. Kerry was ineligible. Did it use the commentary? Or can't you just reach that conclusion based on 1B1.10 itself? I think you have to use the commentary because of the change in Mr. Kerry's criminal history category, Your Honor. Why? The question is what is the meaning of amended guideline range, right? Yes, the applicable guideline range, yes, Your Honor. And the amended guideline range that would have been applicable to the defendant, right? And for that, all we need to do is change the criminal history category, right? Yes, Your Honor. And so why can't we reach the district court's conclusion on eligibility just on the text of the guideline, the policy statement, without depending on the commentary, which makes it crystal clear? Well, Your Honor, I think in Mr. Kerry's case, his guideline range would have been lower if he had gotten the two additional points that had been a part of his plea agreement under 5K2.0. So there was a plea agreement that included a departure? Yes. Right? But that's a departure. Yes. It doesn't change the guideline range, does it? It does in the way that it was originally calculated. It was done as a two-point departure, yes, Your Honor. So if... It was a departure? Yes, it was a departure. It was not a change in the applicable guideline range? Correct. Okay. Well, let me ask, if you think 1B1.10 is ambiguous, do you, on this question about what the applicable guideline range is? Your Honor, I think that, well, first of all, I want to make sure I answer the court's question, but I think, to briefly touch on it, I don't think that there's a plain error here, and I think this... What? Yes or no? Sure. Ambiguous or not? Yes. Yes, it is ambiguous? Ambiguous enough to the extent that the court needed to look at that, yes, Your Honor. Okay. Let me ask you the question I asked your colleague. If you think this is ambiguous, we're supposed to use textual tools to try to sort this thing out. What work do you think the exception for substantial assistance departures does? So 1B1.10 has a specific carve-out for that. It's 1B1.10... And it's carving substantial assistance out from what? The universe of departures and variances, right? Yes, Your Honor. Okay. We don't have a 5K1 departure here. We do not. So why is this ambiguous? Because in this case, Mr. Carey had negotiated for a departure under 5K2.0, which was reflected as a plea agreement, and he did get that departure. That doesn't make the guideline ambiguous. What the parties negotiated for cannot make the guideline ambiguous. We look at the wording of the guideline to determine ambiguity. So it doesn't matter what the parties agreed to, what they had negotiated. We're looking at the text. So the text of the guidelines. I think that that's our point on... I think that's the main point here. You can read this, and you can determine that that's why 1B1.10 had the amendment in 2011 to make sure that everyone was stopping at the same procedural point when this was being considered. And to go to a question or a comment that was made just to affirm an underlying principle, this wasn't a sentencing, and it wasn't a full resentencing. This is a motion to reduce sentence. And so there are different constitutional implications here. This is a mechanism where Mr. Kerry doesn't have all of the traditional methods of sentencing available to him under the federal rules of criminal procedure. He doesn't have a right to appear or to allocute. But in this case, he got to do all those things. Your Honor, so first of all, I do want to go back to the plain error. I don't think it's where a lot of time should necessarily be spent. But in this court's opinion in the United States versus Hackett from 2024, there was an objection to the use of the guidelines in the commentary in the trial court below. But the Kaiser question was not raised. And this court found that it was plain error because the objection hadn't been sufficiently specific to provide a meaningful review by the district court. I think the same standard should be applied here. The district court, Judge Huey, didn't have an opportunity to review the argument that's now being pursued in front of this court. But even if this court applied an over-review, I think that on the first prong of Brito, the eligibility prong, I think Mr. Kerry just simply wasn't eligible. And the district court properly found that. But on to the second prong, the discretionary prong, to emphasize the point, my friend and colleague on their side said they didn't get a fair shot, but I don't think that's reflected in the record. If you look at the record, what happened is Mr. Kerry actually did allocute, and he did describe his programming. And my friend and colleague on their side had filed almost a 50-page brief before the district court, which included all the certificates of his programming. And Judge Huey explained to him, those two points wouldn't matter. It doesn't matter to me because of the balancing of the 3553A factors. And so, Mr. Kerry got to file a motion, file extended paperwork, he got to allocute, he interacted directly with Judge Huey, there was additional briefing, and then there was a written order from the court, we're on ER page 8, the district court explained, even if you were eligible, this wouldn't change. It wouldn't outweigh the factors. The programming is important for you, I want you to have purpose, but it wouldn't change. Unless the court had further questions, the United States would submit. Thank you, Counsel. I've got one minute for rebuttal. Your Honors, I would like to thank Your Honors for your careful attention to this case. I would just note that I did cite at least two cases, including United States v. Horn from the 11th Circuit, where they found that Kisor was an argument and not a claim. Well, of course you know that's not binding on us. I do, but who wants to create circuit splits? Well, sometimes it's necessary. You don't want to discourage that too much. That's a fair point too, Your Honor. Thank you. Thank you, Counsel. Thank you to both counselors for your helpful arguments. The case just argued is submitted for decision by court.
judges: TALLMAN, RAWLINSON, Hamilton